Good morning. May I reserve one minute for rebuttal time, please? May it please the Court, my name is Maximillian Lee for the Plaintiff Christopher Hicks. I appreciate this opportunity to discuss this case with this Honorable Court this morning. I look forward to responding to any questions that Your Honor may have regarding this case. Going to my prepared remarks, this case is a first-party bad faith claim brought by Appellant Christopher Hicks against his underinsured motorist coverage insurer, Progressive Casualty Insurance. Mr. Hicks had a $250,000 underinsured motorist policy. In 2006, in August 2006, at the age of 14, he was unfortunately involved in a vehicle collision in which the vehicle he was in was struck by an intoxicated driver and he sustained serious injuries. He settled his case against the driver, Mr. Kentarjian, for $100,000 and subsequently made a claim for underinsured motorist coverage. Throughout the process up to arbitration, Appellant Progressive did not provide full and fair compensation and offered at most $3,500 in money and a waiver of $2,000 in med pay. The offer was clearly undervalued and the offer was based upon a supposed investigation that Progressive undertook that did not meet the necessary standard of a thorough and fair investigation that the insurer was required to conduct. So the issue in this case is whether the district court erred in granting summary judgment in finding that there are no tribal issues of material fact about a genuine dispute and whether there was a reasonable investigation as a matter of law. What are the tribal issues of material fact regarding whether the injuries were tributal to the prior preexisting condition from the accident years earlier? Thank you, Your Honor. And I believe you're referring to the supposed injury that was a Progressive claim our client sustained when he was 6 years old. There is a tribal issue of material fact whether that injury actually occurred because there's discovery responses that our client and his mother says there was no vehicle accident that caused an injury to Appellant Hicks when he was 6. And there's also really no legitimate dispute that he was asymptomatic even if that car collision occurred. Furthermore, there was no objective scientific evidence that Mr. Appellant Hicks had an annular tear, which was noted in the records of Dr. Chabais and Dr. Nkaua Harada. There were those notations, but there was no objective finding of an annular tear when he was 6 of the same kind that he suffered when he was 14 in the subject August 2006 vehicle collision. Now, the reason why there's a tribal issue of material fact as to this issue is because Progressive based its decision not to pay out really any new money except for a nuisance settlement offer of $5,500 because of this one notation in the records of Dr. Chabais and Dr. Nkaua Harada. But there is no documentation that Progressive even asked, communicated with Dr. Chabais or Dr. Nkaua Harada about their notation to see what their source for this information was, to see whether they themselves independently found that there was an annular tear when Appellant Hicks was 6 years old. There was no MRI finding or other medical records to substantiate that claim. Progressive had a duty to thoroughly and fairly investigate all the bases for coverage to put their insured on the same equal footing as their own interests. They need to, California law requires them to look at all the evidence and not ignore evidence that provides coverage and focus on only evidence that would support their denial of the claim. That would be a breach of the duty of fair dealing and good faith. There is plentiful evidence in the record submitted in opposition to the motion for summary judgment. Most significant, the expert declaration of Sterritt Harper. The Court found his — essentially disagreed with Mr. Harper's opinions and found it conclusory, but it was supported by his review of the evidence and he provided multiple facts to state to under — to support his opinion that it was egregious bad faith on the part of Progressive to aggressively push their theory, their unsubstantiated theory that Appellant Hicks was exaggerating his pain when there was no evidence to support Progressive's claim of exaggeration. It was also bad faith to state that the August 2006 vehicle collision did not actually cause the pain and suffering and injuries reported by Appellant Hicks, given the lack of evidence that I referred to previously. It was also bad faith on the part of Progressive, Appellate Progressive, in selecting Robert Wilson, the same orthopedic surgeon who was hired by the defense in the underlying vehicle collision, defending Kent Arginian, as their own expert. As early as February in 2009, I believe, the Progressive knew that Dr. Wilson had a paid-for opinion against Appellant Hicks, finding that his injuries were not caused by the subject 2006 vehicle collision, that it was congenital, that it was not substantially caused by that vehicle collision. Progressive, Appellate Progressive, had a duty to honestly and fairly select its experts to investigate the claims of its insured. It did not do so. Of the dozens, hundreds, maybe even more surgeons that the Progressive could have selected as its expert, they chose the one expert, a medical expert, who opined that Appellant Hicks' injuries were not caused by the subject vehicle collision, as their own expert. They knew he was, quote-unquote, familiar with the facts of the case, with the facts as presented by the defense for Mr. Kent Arginian, the intoxicated driver. They knew what his opinion would be. They knew that he would essentially say that there was no need for additional money to be provided to Appellant Hicks. And they selected him anyway, rather than honestly select any of the other medical experts that could have fairly independently looked at Appellant Hicks once again. From the outset, Appellate Progressive created an adversarial relationship with its insured, and it was more interested in concocting reasons to deny his claim rather than fairly and thoroughly investigate Appellant Hicks' claim. The insurer has a duty to protect the interests of its insured, and it must fully inquire into the possible bases that might support the insured's claim. Now, there is a public policy to have insurance claims paid out, legitimate policy claims to be paid out, rather than lead to expensive and time-consuming negotiations and arbitration. There is no dispute about coverage in terms of the client was covered by this underinsured motorist policy. And for Appellate Progressive to delay payment, to deny full coverage, was bad faith, and the district court should properly be reversed, and this case remanded for further proceedings. Thank you, counsel. Good morning, Your Honors. I am Julia Azarill. I represent Progressive Casualty Insurance Company in this appeal, and I will try to explain why I believe this court should affirm the district court in its ruling. Judge, the district court made one comment that I do believe is erroneous in its findings of fact and conclusions of law. Perhaps it was a throwaway comment, but what the court said is, Safeway and Progressive may have been wrong, but they were not unreasonable. I think this is a misreading of the court's duty and the court's job that's set out first in the Federal case, Guabara, and then adopted in the California case, the Chateau Chambray. The decision the court is faced with in determining whether or not there has been there is a genuine dispute that defeats evidence is, and the Chambray court says that, is the court does not decide which party is right as to the disputed matter, but only that a reasonable and legitimate dispute actually existed. So, Judge Nguyen, when you ask what was the material dispute about the prior, alleged prior, claimed to be prior torn annulus, I would submit that that may not be a question that is directly relevant. There is conflicted evidence whether it was a preexisting tear or a tear that occurred in this accident, and it's exactly that dispute. But it goes to the bad faith claim, so I think it's relevant, right? I understand the distinction that you're trying to draw, but in the face of contrary evidence, if an insurer ignores that, but focuses only on the evidence that goes in favor of denying the claim, that's an indication of possible bad faith. Or a biased investigation. That would then create tribal issues on the bad faith claim for purposes of precluding a grant of summary judgment, would it not? No, it would not. And tell me why. Because if you look at, in a type of case like this, you have to look at all of the evidence that Progressive had. And if we focus on whether or not there was a preexisting annular tear, you have his own treating doctors, Kawaharada and Chabay, saying there's a preexisting tear. You have the mother reporting to the chiropractor, right, the first chiropractor they see, that he had a prior MRI in a prior accident, which was then subsequently denied by the mother under oath. You have the mother, Kawaharada, and Yoser, those are two treating chiropractors, going to the school and saying he has a soft tissue, sprained strain, which was exacerbated by a prior annular tear. So Progressive looks at that objective evidence, those objective records, the plaintiff's own treating physicians, and then Progressive looks at the plaintiff's expert, Alexakis, who doesn't even know about these claims. Progressive looks at the conflict between answers in interrogatories and the mother's admissions in the records, and Progressive has to weigh that and come to a decision. And again, it's not that they were right, but that they looked at it and had a basis for their position. And an important issue to consider is that in this UIM forum, Progressive is adverse to its client, so to its own insured. It owes the insured a duty to do a full investigation. And what I don't see anywhere in the plaintiff's argument, in the opponent's argument, is that the investigation wasn't full. Progressive had a lot of evidence to look at, and April Brownenberg in her declaration sets out how she looked at it. So she has to come to a judgment. She does that with her experience, and in the lengthy declaration supported by evidence, she sets out how she did that. And it's kind of the conundrum of this type of case. Of course, it's in dispute, but there was quite a bit of evidence for her to consider that there was an annular, a prior existing annular tear. And I would urge you to look at page the bottom, page 5, and the top of page 6 of the appellant's brief, where the appellant says there was a prior, this is a sprain, strain, severe sprain with exacerbation of an annular tear. And exacerbation, when I interpret that or when Progressive interprets exacerbation, something has to preexist to exacerbate. So I would say that in addressing whether or not there is a prior tear or a current tear, Progressive assessed that there was some kind of tear, and they then attempted to evaluate the effect on Mr. Hicks's life. I would like to address the argument that Mr. Lee made about dishonest experts and the incomplete investigation. The incomplete investigation focuses on the reply brief on the issue of the fixation on whether or not there was a preexisting tear. So I'm not sure I need to spend more time on that. But there is this argument that Progressive dishonestly selected Robert Wilson. Robert Wilson was hired by Safeway. Progressive, in this UIM case, steps into the shoes of that prior tortfeasor. In this case, they step into the shoes of Mr. Kentarjan. Progressive then looks at what the injury and what happened to the injury. They didn't deny the injury. They concluded there was an aggravation of an annular tear, and they concluded that there was soft tissue, and they concluded there was pain and suffering. They concluded there was some $9,600 in medical expenses, not disputed, all reasonable. And then Progressive allotted approximately $30,000 to $50,000 in general damages. What Progressive did not step into when they stepped into the shoes of Mr. Kentarjan was his intoxication. And in the claim file, there is a note that the reason Safeway paid was because of his intoxication, that that evidence was coming into trial. The expert, Dr. Wilson, was hired then by the same by a party that is in exactly the same adverse relationship to Mr. Hicks as Progressive was. If you look at the cases that interpreted. And I'm not familiar with this, so I want to know how these things usually work. Is it unusual or is it common to basically reach out and work with the lawyers and experts for clients who, prior to the settlement, their interests were obviously adverse to Progressive's insurance interests, right? What the claims adjuster did in this case, reaching out to Safeway and then talking to their attorneys, relying on their experts, is that common course of conduct? I think we can conclude it's common in the Maynard case. They did exactly that in the State court. I mean, first of all, Progressive has to know what Safeway is doing. Are they going to pay the limits? When they pay the limits, they get medical records, they get their investigations. It's all been done. It's all through subpoena. There's no attack on that, and yes, that is common. I would submit it's common. There's no evidence about it in this case, but I would submit it is common. And if you look at a case of Parker, which is FSUP 2nd, 1167, or Hangarter, experts are dishonestly selected whether they're biased or they aren't provided critical foundation, but there's some reason to distrust them. Dr. Wilson reviewed all of the records and then reviewed more records at the request of Progressive. So I would say that Plaintiff has not prevailed in that argument. I'm sorry, I thought my red light was on. Dr. Wilson was given the entire file from Safeway, and then when Progressive retained him, they asked him more questions. They gave him more records. There's no factual argument that he was biased. There's no factual argument that he wasn't provided with critical foundation, as in the Hangarter or the Parker case. And there's no other argument that he was somehow unqualified other than the fact that Progressive knew his opinion. In California State courts, of course, once there's a designated expert and he was designated as the expert for the underlying civil case, any party can call that expert. And this is really what Progressive did. They called that expert and then they gave him more material. So it's the conundrum in these UIM bad faith cases and looking at a genuine dispute is, in fact, the claim file, especially this claim file. Kennedy. And the original defendant that Judge Wynn's talking about, he went and talked to those people. Did that case go to trial or was it settled for the $100,000? As shown in Ms. Brown and Murray's declaration, it was about to go to trial. They had filed motions in Luminae to keep out the intoxication and the prior convictions for DUI. They lost those motions and then they paid the $100,000. The experts that they relied on were going to testify against the plaintiffs. And despite that testimony, they paid, that adverse testimony, they paid the full amount of the policy. Yes. And what they told Progressive, they did that when they lost the motions in Luminae to keep out his intoxication. That would be a trial call to protect their insured safely saying, well, you know, we've lost our legal ability to protect them. And though we're not on for punitive damages, if we can protect them by settling and that's what they did. And although Dr. Wilson would be adverse, the Weston case says that Progressive kind of used an expert in the underinsured motorist case to decrease damages. That's Plaintiff's problem. He was going to decrease damages. But they don't say that his opinion was in any way improperly procured or dishonest. So I believe I've addressed the issues raised by the plaintiff, and I think the Court was right. There was a legitimate dispute based on the investigation and everything that April Brandenburg had to consider. She made her decision. She didn't reach the same decision that the arbitrator did, but she did reach her decision based on a comprehensive review. The fact that the arbitrator's $200,000, was that for the total? Did that include the $100,000? That included the $100,000 and $2,000 medical payments. And the policy was $250,000. So just in summation, I would just remind this Court that the decision is not But the arbitrator's excess was $100,000. There was $98,000 that Progressive paid on the award of $200,000. Is that clear? Your Honor? Thank you.  Before I go into my prepared remarks, if there's any questions that this Court may have, I'd be happy to address them. But going to my remarks, I believe my opposing counsel made, to me, a stunning admission that Progressive had an adverse relationship to its own insurer, as a first party insurer, it has a duty to actually protect its insurer's interests. It does not have the same role and the same duty as a third party insurer, Safeway, to protect Mr. Kantarjian's legal interests. In fact, under Egan v. Mutual of Omaha Insurance Company, a 1979 California Supreme Court case, the Court held that the insurer has a duty to protect the interests of its insured and must fully inquire into possible bases that might support the insured's claim. They don't have a duty to only look into the possible bases to deny the insured's claim. And Progressive, Appellee Progressive completely ignores the second part to Dr. Chabais' report, where she notes that there is some record of Appellant Hicks suffering a vehicle collision when he was six years old. And notwithstanding the fact that there's no MRI and no scientific objective testing, the second part of it is that Dr. Chabais stated that Appellant Hicks fully recovered within a few years. And the record shows that there was no evidence whatsoever that Appellant Hicks suffered any kind of the injuries that he was complaining about after the August 2006 vehicle collision. And for those reasons, there should have been a finding that there were reasonable bases for finding that faith. And the district court's grant assembly judgment should be properly reversed. Thank you. Thank you, counsel.
judges: Reinhardt, Tashima, Nguyen